**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:                                                            BKY 15-60071-MER

Dennis Michael Thiel, Jr.,                                        Chapter 7

            Debtor.

_____

David G. Velde, Chapter 7 Trustee,                               Adv. No. 17-06007-MER

            Plaintiff,

      v.

Dennis Michael Thiel, Jr.,

            Defendant.

_____

**MEMORANDUM DECISION**
_____

At Fergus Falls, Minnesota, January 23, 2018.

The chapter 7 trustee, David G. Velde, seeks to revoke the discharge of the debtor,

Dennis Michael Thiel, Jr., under 11 U.S.C. § 727(d)(2).[1]  A trial occurred on November 22,

2017.  Michael R. Ruffenach represents the debtor.  Logan M. Moore represents the chapter 7

trustee.  The Court will now decide the matter.

This memorandum decision constitutes the Court's findings of fact and conclusions of

law under FED. R. BANKR. P. 7052.  The Court has jurisdiction here through 28 U.S.C. §§ 1334

and 157.  This matter qualifies as a core proceeding under 28 U.S.C. § 157(b)(2)(A), and

157(b)(2)(J).

---

[1] All statutory references in this opinion to the Bankruptcy Code are to the specified provision
within 11 U.S.C. §§ 101-1532.

### WHAT HAPPENED:  A BRIEF BACKGROUND

How the debtor doomed his discharge cannot be precisely said, because he released a

vortex of inconsistent statements.  Even so, the record draws the following big picture.

At first glance, nothing about his bankruptcy case seems too out of the ordinary.  On

February 13, 2015, he filed his bankruptcy petition, along with schedules, and other documents.

Around two months later, on April 17, 2015, his meeting of creditors concluded.[2]  On April 21,

2015, he filed amended schedules.  Then, on June 7, 2015, he received his discharge.  Nothing

looks too outwardly unusual.

 After that, however, a fixed gaze on the debtor displaced a glance, and all semblance of

ordinariness fell apart.  On August 26, 2015, the chapter 7 trustee filed a motion to turnover

under § 542(a), which sought, in part, to obtain the debtor's 2014 tax refunds.[3]  The debtor,

however, spent it all.  So the Court, on December 28, 2015, denied the request for turnover of the

2014 tax refunds, in light of Brown v. Pyatt (In re Pyatt), 486 F.3d 423 (8th Cir. 2007)

(interpreting § 542(a) to require, as a condition to compel turnover, "possession, custody, or

control" of the property of the estate at the time of the demand for turnover).  Fast-forward to

March 31, 2017.  The chapter 7 trustee commenced this adversary proceeding.  Pl.'s Compl.,

ECF No. 1.  He argues that the debtor got his hands on property of the estate–the 2014 tax

refunds.  And the debtor knowingly and fraudulently failed to surrender and to report them to

him.  By that conduct, the trustee argues that the debtor has positioned his discharge securely

within the crosshairs of a revocation action under § 727(d)(2) of the Bankruptcy Code.  Id.  But

that's not the end of this story–one which the debtor struggles mightily to keep straight.

---

[2] 11 U.S.C. § 341(a).

[3] The debtor's 2014 income tax refunds were in the amount of $6,196.00 from federal, and in the
amount of $1,844.00 from the state.  Stip. Facts No. 3, ECF No. 19.

**ISSUE**

Will § 727(d)(2) operate to revoke a debtor's discharge when his failure to report or surrender tax refunds from pre-petition wages to the chapter 7 trustee was accompanied by contradictory explanations?

**LAW:  REVOCATION OF DISCHARGE UNDER SECTION 727(d)(2)**

The discharge of § 727 of the Bankruptcy Code aims to implement the long-standing fresh start policy.  S. REP. NO. 95-989, at 7 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5793 ("At the heart of the fresh start provisions of the bankruptcy law is section 727 covering discharge.").  That policy provides "the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt."  Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934).  In line with that spirit, § 727(b) relieves the debtor from pre-petition debt.  11 U.S.C. § 727(b) ("a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter . . . .");  id. § 301 (operating to mean that the date of the order for relief in a voluntary case serves as the date the debtor files a petition with the bankruptcy court).  Rather than a right accorded to all debtors though, the "discharge is a privilege granted the honest debtor . . . ."  In re Tabibian, 289 F.2d 793, 795 (2d Cir. 1961).

This powerful privilege may fall into the wrong hands, but reversibly so.  Section 727 of the Bankruptcy Code establishes the grounds for an extraordinary remedy:  a revocation of the discharge.  See Miller v. Kasden (In re Kasden), 209 B.R. 239, 241 (B.A.P. 8th Cir. 1997).  The ground pursued by the trustee here, § 727(d)(2), states:

3

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

. . .

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;

11 U.S.C. § 727(d)(2).  The plaintiff must prove by a preponderance of the evidence that:  (1) the debtor acquired property of the estate; (2) and the debtor knowingly and fraudulently failed to report, to deliver, or to surrender that property to the trustee.  Doeling v. Coating Specialties, LLC (In re Toftness), 439 B.R. 499, 501 (B.A.P. 8th Cir. 2010) ("In an action to revoke a discharge, the plaintiff must prove each element by a preponderance of the evidence."); Yules v. Gillis (In re Gillis), 403 B.R. 137, 145-46 (B.A.P. 1st Cir. 2009) (partitioning § 727(d)(2) into elements).

The application of this provision demands a balance of many interests.  Heavy on one scale, courts construe grounds for discharge revocation "strictly against the party seeking revocation and liberally in the debtor's favor" because of its potentially cataclysmic consequences on a debtor, and its concomitant stalling effect on the realization of the fresh start policy.  Smith v. Jordan (In re Jordan), 521 F.3d 430, 433 (4th Cir. 2008) (quoting Pierce v. Fuller (In re Fuller), 356 B.R. 493, 495 (Bankr. D.S.D. 2006)).  On the other scale, the Court remains aware that § 727(d)(2) provides "a necessary supplement to § 727(a)(2)," because property of the estate may become acquired under § 541(a) even after discharge happens. CHARLES JORDAN TABB, THE LAW OF BANKRUPTCY § 10.33 (4th ed. 2016).  Based upon the relationship between these two subdivisions, it would stand to reason that the "centuries of precedent in demanding that a debtor who seeks the privilege of a discharge in bankruptcy must

4

not intentionally attempt to frustrate the collection efforts of creditors prior to and in that

bankruptcy case" embodied in  § 727(a)(2) flows into § 727(d)(2). Id. at § 10.5.  The Court takes

into account a multiplicity of interests in viewing § 727(d)(2).[4]

As developed below, the result borne out by an application of each element is a

revocation of discharge.

### FIRST ELEMENT:  PROPERTY OF THE ESTATE INCLUDES TAX REFUNDS

Through § 541(a) of the Bankruptcy Code, the commencement of a bankruptcy case

creates an estate comprised generally speaking of "all legal or equitable interests of the debtor in

property as of the commencement of the case."  11 U.S.C. § 541(a).  This bankruptcy estate

catches a debtor's anticipated tax refund attributable to pre-petition events.  See In re Benn, 491

F.3d 811, 813 (8th Cir. 2007) (citing Barowsky v. Serelson (In re Barowsky), 946 F.2d 1516,

1517-8 (10th Cir. 1991)).  No party here disputes that the 2014 tax refunds constitute part of the

bankruptcy estate.

### SECOND ELEMENT:
### KNOWINGLY AND FRAUDULENTLY FAILED TO SURRENDER OR TO REPORT PROPERTY OF THE ESTATE TO THE TRUSTEE

---

[4]  An outgrowth concern of the collection efforts of creditors through bankruptcy is the debtor's cooperation by way of disclosure.  The Bankruptcy Code reveres complete disclosure as a touchstone feature.  See In re Bernard, 99 B.R. 563, 570 (Bankr. S.D.N.Y. 1989).  A non-exhaustive survey of the provisions of the Bankruptcy Code and its accompanying rules point to the importance of the debtor's full disclosure.  See, e.g., 11 U.S.C. § 521 (imposing duties upon the debtor to disclose certain information); 11 U.S.C. § 727(a)(3) (setting failure to maintain adequate books and records as a ground to deny discharge); FED. R. BANKR. P. 1007(h) (requiring a debtor to file amended schedules after acquiring property of the estate under 11 U.S.C. § 541(a)(5)); FED. R. BANKR. P. 1009(a) (permitting a debtor to amend a voluntary petition, list, schedule, or statement as a matter of course whenever before the case is closed). Indeed, "The debtor's duty of disclosure requires updating schedules as soon as reasonably practical after he or she becomes aware of any inaccuracies or omissions."  Hecker v. Seaver (In re Hecker), 703 F.3d 1112, 1115 (8th Cir. 2013) (quoting Bauer v. Iannacone (In re Bauer), 298 B.R. 353, 357 (B.A.P. 8th Cir. 2003)).  A debtor's conduct that fails to conform to the direction of the law impacts an analysis under § 727(d)(2).  Here, the debtor amended his schedules with ponderous heavy-footedness, as will become apparent from the discussion below.

The second element for a revocation of discharge under § 727(d)(2) asks whether the debtor "*knowingly* and *fraudulently* failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee."  11 U.S.C. § 727(d)(2) (emphasis added); see Doeling v. Coating Specialties, LLC (In re Toftness), 439 B.R. 499, 504 (B.A.P. 8th Cir. 2010).

Courts have expanded on the term "knowingly" in § 727(d)(2) in different ways.  See McDermott v. Davis (In re Davis), 538 B.R. 368, 384-85 (Bankr. S.D. Ohio 2015) (collecting and examining cases).  In view of the different articulations of that term, and its distinction from and connection to the adverb, "fraudulently," like the court in Davis, this Court finds that inferences can supply at times a showing of a knowing failure, fraudulent failure, or a knowing and fraudulent failure in an action under § 727(d)(2) of the Bankruptcy Code.  Id. at 385.  Thus, the same considerations that inform on the presence of a fraudulent failure may also inform on the presence of a knowing failure.

The fraudulent intent required to satisfy § 727(d)(2) tends to force courts to assess circumstantial evidence, because a party rarely admits to fraud.  Fokkena v. Klages (In re Klages), 381 B.R. 550, 554 (B.A.P. 8th Cir. 2008).  In In re Klages, the Bankruptcy Appellate Panel for the Eighth Circuit gave guidance on the formation of fraudulent intent:

> Fraudulent intent may be established by showing that the debtor knowingly made an omission that misleads the trustee or that the debtor engaged in a fraudulent course of conduct.  A debtor's intent may be inferred from all the surrounding circumstances where the debtor's pattern of conduct supports a finding of fraudulent intent.  The focus is on whether the debtor's actions appear so inconsistent with his self-serving statement of intent that the proof leads the court to disbelieve the debtor.

Id.  The court in Davis found that an inference of both knowledge and fraudulent intent may come "from the debtor's 'whole pattern of conduct,' including conduct that exhibits a 'reckless indifference to the truth.'"  Davis, 538 B.R. at 385 (quoting Sicherman v. Rivera (In re Rivera),

6

No. 06–8013, 2007 WL 130415, at *5, 2007 Bankr. LEXIS 26, at *15-16 (B.A.P. 6th Cir. Jan.

11, 2007)).

The record reveals, in at least two ways, that the debtor's conduct satisfies the

"knowingly" component of § 727(d)(2) of the Bankruptcy Code.  The first way focuses on the

connection between the debtor's amendments to his schedules, and his testimony at the meeting

of creditors.  The second way finds that the debtor's fraudulent intent, under these circumstances,

also satisfies that component of § 727(d)(2).

*Knowing Failure*

The manner in which the debtor played a cups and balls trick with information in his

schedules, and his testimony at the meeting of creditors satisfies the "knowingly" requirement of

§ 727(d)(2).  Schedule B directed the debtor to, "Except as directed below, list all personal

property of the debtor of whatever kind."  Ex. 1 at 9 (original schedule B); Ex. 3 at 1 (amended

schedule B).  He placed an "x" to show no "[o]ther liquidated debts owed to debtor including tax

refunds" were owed to him on his original schedule B, filed on February 13, 2015.  Ex. 1 at 10.

He filed his 2014 income tax returns through H&R Block on or around February 17, 2015.  Stip.

Facts No. 2, ECF No. 19.

 Almost two months later, and seven days before his meeting of creditors, on April 10,

2015, the debtor signed his amended schedules.  Stip. Facts No. 5, ECF No. 19.  In it, he added

his 2014 income tax refunds in the amount of $7,236.00 on his schedule B.[5]  Ex. 3 at 2.  On

April 17, 2015, at his meeting of creditors, the trustee asked whether the debtor had thought of

any mistakes or errors since his petition was filed.  Ex. 6.  The debtor said he would file an

amended schedule to recognize and exempt a part of a wage claim, and more accurately reflect

---

[5] That amount, $7,236.00, differs from the amount the debtor stipulated that he received for tax refunds, $8,040.00.  Stip. Facts No. 3, ECF No. 19.

the size of his social security disability claim.  Ex. 5 at 4; Ex. 6.  Those amendments on schedule

B appear on the same page as the added tax refunds.  Ex. 3 at 2.  The trustee and the debtor's

attorney also discussed the possibility of joining forces to pursue the debtor's wage claim.  ECF

No. 6.  At the meeting of creditors, the debtor's attorney said "certainly" in response to the

trustee's statement:  "I think you would acknowledge that a portion of that [wage claim] is estate

property?"  Id.  That's the same wage claim featured on the same page as the 2014 tax refunds on

the amended schedule B.  Ex. 3 at 2.  The only mention of anything related to the debtor's tax

return at the meeting of creditors was when the debtor confirmed that he would give another

copy of his tax returns to the trustee.  Ex. 6.  This conduct satisfies the "knowingly" component

of a § 727(d)(2) claim.

The second way the "knowingly" part of § 727(d)(2) manifests is through the analysis of

the debtor's fraudulent intent, discussed below.

### Fraudulent Intent[6]

The debtor's inconsistent representations bred even more inconsistent representations.

An examination of the inconsistencies found in his answers to questions about how he received

his tax refunds, when he received the tax refunds, and how he spent his tax refunds all support a

finding of fraudulent intent.

How did he receive his tax refunds?  The debtor's response:  "after he received his rapid

refund, he spent the money . . . ."  Def.'s Answer, ¶ 4, ECF No. 7.  At trial, the debtor

emphatically said that he does not use rapid refund, because doing so wastes money.  In his

answers to request for admissions, he admitted that his 2014 tax refunds were electronically

deposited to his bank account.  Ex. 5 at 5.  Yet, his memorandum of law and facts states:  "[h]e

---

[6] This analysis also supports a finding of the knowing failure component of 11 U.S.C. §
727(d)(2).

did not deposit the refunds in his checking account and immediately cashed the refund and spent

the proceeds." Def.'s Mem. at 2; ECF No. 22. At trial, he slowly settled on the explanation that

he believed he received tax refunds checks at different times by mail. So, which one is it?

When did he receive his tax refunds? At trial, the debtor's story about the details

surrounding his 2014 tax refunds turned into a moving target. The debtor said he received his

tax refunds three to four weeks after the date he filed his tax return, February 17, 2015. He

thought the first part of March was about the right time he received his tax refunds. Then his

story shifted to one check arriving in March, and the other in April. According to him, tax

refunds can take up to three to six weeks to receive. In his answers to request for admissions, he

admitted that after he filed bankruptcy, and before the meeting of creditors, he had spent all of

his 2014 tax refunds. Ex. 5 at 5. But at trial, he said that he received the refunds after the date of

the meeting of creditors. Again, which one was it?

The one consistency gleaned from these many inconsistencies is that the debtor received

his 2014 tax refunds. What did he spend it on? His response: a number of things, including five

different payments in the amount of $599.00 each.[7] Ex. 2 at 4. Of particular peculiarity, he

stated that he used his tax refunds to pay his attorney post-petition in the amount of $1,835.00.

Id. Yet, in his answers to request for admissions, he admitted that he did not pay his attorney

from his 2014 tax refunds in that amount. Ex. 5 at 5. The debtor testified at trial that he paid

more than $2,000.00 to his attorney. The disclosure of compensation of attorney for the debtor

form represents that the debtor was charged, and paid, $1,500.00 for his attorney's legal services.

Ex. 1 at 34. The debtor's statement of financial affairs shows a payment to his attorney in the

---

[7] He paid, according to this affidavit, $599.00 each to: (1) Rebecca Anderson; (2) Dennis Thiel,
Sr.; (3) cellular phone bill; (4) Tina Binkly; and (5) his electric bill. The debtor explained at trial
that these debts were incurred pre-petition.

amount of $1,500.00.  Ex. 1 at 26.  One consistency, however, devolves into a sea of

inconsistencies.

Taking all of the above factors into consideration, the debtor's conduct surrounding his

2014 tax refunds satisfies the fraudulent intent requirement of § 727(d)(2).

## CREDIBILITY

The Court, as the trier of fact, assesses the witness's credibility, and the adequacy of

evidence.  Johnson v. Fors (In re Fors), 259 B.R. 131, 140 (B.A.P. 8th Cir. 2001).  The

assessment of a witness's credibility may draw on an evaluation and the content of testimony,

changes in the witness's demeanor, and the Court's experience, along with other considerations.

Pearce v. E.L.W. Corp. d/b/a/ Weber Concrete (In re Pearce), 400 B.R. 126, 133 (Bankr. N.D.

Iowa  2009).  The testimony of the debtor when viewed against the rest of the record collapsed

his credibility to dust.  Indeed, the debtor's testimony exited the bounds of credulity.  His

representations conflicted with his representations, which, in turn, left the sincerity of his

statements in unacceptable doubt.  In other words, the debtor lacked credibility.

## CONCLUSION

The analysis above shows that the debtor acquired property of the estate–his 2014 tax

refunds.  He also knowingly and fraudulently failed to surrender that property to the trustee.[8]

That conduct compels a revocation of his discharge under 11 U.S.C. § 727(d)(2).

Therefore,

---

[8] The Court need not decide whether the debtor knowingly and fraudulently failed to report his
2014 tax refunds to the trustee, having decided that the debtor knowingly and fraudulently failed
to surrender the 2014 tax refunds to the trustee.

**IT IS ORDERED** that the discharge of Dennis Michael Thiel, Jr. in bankruptcy case no.

15-60071 is revoked under 11 U.S.C. § 727(d)(2).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

*/e/ Michael E. Ridgway*

United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on 01/23/2018
Lori Vosejpka, Clerk, by MJS